UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 17-49602

SEAN BLUME, and                                 Chapter 13
NICOLE BLUME,
                                                Judge Thomas J. Tucker
                        Debtors.
_____/

**OPINION REGARDING ALISA A. PESKIN-SHEPHERD, PLLC'S MOTION
FOR DERIVATIVE STANDING AND RELATED RELIEF,
AND REGARDING THE CHAPTER 13 TRUSTEE'S MOTION
TO ABANDON MALPRACTICE CLAIMS**

## I. Introduction

This Chapter 13 case, in which no plan has yet been confirmed, presents the issue of

whether the Court should grant derivative standing to Alisa A. Peskin-Shepherd, PLLC ("Peskin-

Shepherd"), a creditor of the Debtor Nicole Blume, to file and prosecute, on behalf of the

bankruptcy estate, a legal malpractice action against the Debtor's former state court attorney,

Loren Mannino, and his law firm, ManninoMartin (collectively, "Mannino"). In its Motion

seeking derivative standing (the "Derivative Standing Motion"),[1] Peskin-Shepherd seeks to

pursue specific proposed legal malpractice claims. Those claims allege that Loren Mannino was

negligent in several respects, in certain advice he gave and failed to give to Nicole Blume, and in

representing Nicole Blume in state court actions related to Nicole Blume's divorce. The claims

are non-exempt property of the bankruptcy estate.[2] Peskin-Shepherd fears, with some

_____

[1] The Derivative Standing Motion is entitled "Renewed Motion to Modify Order Staying Further
Proceedings in this Chapter 13 Case, Pending Completion of State Court Litigation (Doc. 87) in Order to
Pursue Malpractice Action in State Court" (Docket # 220).

[2] *See* 11 U.S.C. §§ 541(a)(1),1306(a)(1). This is undisputed. And to date, neither of the
Debtors has claimed any exemption in the malpractice claims. (*See* Amended Schedules C (Docket

justification, that if suit is not filed against Mannino before February 18, 2021, the applicable statute of limitations may bar some or all of the malpractice claims.

The Chapter 13 Trustee has refused to prosecute the estate's malpractice claims herself, but she also objects to the Derivative Standing Motion. The Chapter 13 Trustee has moved to abandon the malpractice claims to the Debtors (the "Abandonment Motion").[3] The Debtors, for their part, object to the Derivative Standing Motion, but also refuse to pursue the malpractice claims themselves. Mannino also objects to the Derivative Standing Motion.

This case came before the Court for a hearing on December 17, 2020, on: (1) the unresolved portion of Peskin-Shepherd's Derivative Standing Motion;[4] and (2) the Chapter 13 Trustee's Abandonment Motion. During the hearing, the Court heard oral arguments of Peskin-Shepherd and of the parties who object to Peskin-Shepherd's Derivative Standing Motion and who support the Chapter 13 Trustee's Abandonment Motion — namely, the Debtors; the Chapter 13 Trustee; and Mannino. The Court then took these matters under advisement.

For the reasons stated below, the Court will grant Peskin-Shepherd's Derivative Standing Motion, with certain conditions, and the Court will deny the Trustee's Abandonment Motion.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case, and these contested matters, under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D.

---

# 17)).

[3] This is in the form of the notice filed by the Trustee, entitled "Trustee's Notice of Abandonment of Potential Cause of Action" (Docket # 247).

[4] The Derivative Standing Motion was granted in a limited part, to the extent of certain limited stay relief, by the Court's Order entered on November 12, 2020 (Docket # 240).

2

Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and § 157(b)(2)(O). This proceeding also is "core" because it falls within the definition of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within this category in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans–Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III. Discussion

### A. The Derivative Standing Motion

#### 1. Giving a creditor "derivative standing" to prosecute claims on behalf of a bankruptcy estate

Normally, a creditor in a bankruptcy case does not have authority or standing to file and prosecute claims that belong to the bankruptcy estate. But courts sometimes grant such authority to a creditor, often to prosecute an action to avoid a preferential or fraudulent transfer, and this is commonly referred to as derivative standing. The Sixth Circuit has held that bankruptcy courts may grant derivative standing to a creditor in Chapter 11 cases and in Chapter 7 cases, if certain requirements are met. *See In re Dzierzawski*, 518 B.R. 415, 417-19 (Bankr. E.D. Mich. 2014) (discussing Sixth Circuit cases).

There is no good reason not to grant similar derivative standing in Chapter 13 cases. And courts have done so. *See, e.g.*, *In re Demeza*, 582 B.R. 868, 876-77 (Bankr. M.D. Pa. 2018) (citing cases); *see also Countrywide Home Loans v. Dickson* (*In re Dickson*), 427 B.R. 399, 403-06 (B.A.P. 6th Cir. 2010) (bankruptcy court had authority to grant derivative standing to Chapter

13 debtor to pursue a lien avoidance action under Bankruptcy Code §§ 544 and 547, which sections authorize such actions by "the trustee").

In this case, Peskin-Shepherd has met each of the Sixth Circuit requirements for granting derivative standing, as those requirements are properly adapted and applied to this Chapter 13 case.

**2. The Sixth Circuit requirements for derivative standing**

In *Dzierzawski*, this Court described the Sixth Circuit's requirements that must be met for a bankruptcy court to grant derivative standing to a creditor in cases under Chapter 11 and Chapter 7. The Court reiterates and adopts the following from the *Dzierzawski* case:

> In *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (*In re Trailer Source, Inc.*), 555 F.3d 231, 243-45 (6th Cir. 2009), the United States Court of Appeals for the Sixth Circuit held that a bankruptcy court may grant standing to a creditor in a Chapter 7 case to pursue claims on behalf of the bankruptcy estate, when the creditor meets the requirements for derivative standing set forth in *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd.* (*In re The Gibson Group, Inc.*), 66 F.3d 1436 (6th Cir. 1995). In *Gibson Group*, a Chapter 11 case, the Sixth Circuit held that the following requirements must be met for such standing to be granted:
>
> > [A] bankruptcy court may permit a single creditor in a Chapter 11 case to initiate an action to avoid a preferential or fraudulent transfer instead of the debtor-in-possession **if the creditor: 1) has alleged a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court; 2) has made a demand on the debtor-in-possession to file the avoidance action; 3) the demand has been refused; and, 4) the refusal is unjustified in light of the statutory obligations and fiduciary duties of the debtor-in-possession in a Chapter 11 reorganization.** We also hold that, while the

4

creditor has the initial burden to allege facts showing that the refusal to file suit is "unjustified," the debtor-in-possession must rebut the presumption if the creditor carries its initial burden. Contrary to the district court's view, we believe that a creditor need not plead facts alleging the debtor-in-possession's reason or motive for the inaction, but may meet its burden to allege unjustified inaction through notice pleading by alleging the existence of an unpursued colorable claim that would benefit the estate. *See* Fed.R.Civ.P. 8; Fed.R.Bankr.P. 7008 (making Fed.R.Civ.P. 8 applicable in bankruptcy adversary proceedings). If the debtor-in-possession gives no reason for its inaction when a demand is made, the bankruptcy court may presume that its inaction is an abuse of discretion ("unjustified") if the complaint alleges a colorable claim.

*Gibson Group*, 66 F.3d at 1438-39 (emphasis added). Later in its opinion, the Sixth Circuit stated the fourth of the requirements quoted above in slightly different words:

In conclusion, we hold that a creditor or creditors' committee may have derivative standing to initiate an avoidance action where: 1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court, and **4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case**. A creditor has met its burden to show standing to file an avoidance action if it has fulfilled the first three requirements and the trustee or debtor-in-possession declined to take action without stating a reason. The burden then shifts to the debtor-in-possession to establish, by a preponderance of the evidence, that its reason for not acting is justified.

*Id.* at 1446 (emphasis added). Thus, the court equated

5

"unjustified" with an "abuse of discretion" in this context.

Later, in *Trailer Source*, the Sixth Circuit summarized the *Gibson Group* requirements for derivative standing by stating *Gibson Group's* "colorable claim . . ." requirement in a different way:

> In *Gibson Group*, we held that a party moving for derivative standing must show that: (1) a demand was made on the trustee (or debtor-in-possession) to act, (2) the trustee (or debtor-in-possession) declined, (3) **a colorable claim exists that would benefit the estate**, and (4) the trustee's (or debtor-in-possession's) inaction was an abuse of discretion. 66 F.3d at 1446.

*Trailer Source*, 555 F.3d at 244-45 (emphasis added). Thus, the difference is that *Gibson Group* stated the "colorable claim" requirement as this: "the creditor . . . has alleged a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court" or "a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court;" while *Trailer Source* stated this requirement simply as "a colorable claim exists that would benefit the estate."

Despite this wording difference, it is clear that the Sixth Circuit did not intend in *Trailer Source* to change the "colorable claim . . ." requirement of *Gibson Group*. Rather, *Trailer Source* simply held that the *Gibson Group* requirements apply in Chapter 7 cases as well as in Chapter 11 cases. And the *Trailer Source's* summary of the *Gibson Group* requirements, quoted above, was not intended to change those requirements.

For these reasons, the Court will decide [the creditor's] Motion by applying the *Gibson Group* requirements. But the Court's decision is informed by what *Trailer Source* had to say about the requirements in the Chapter 7 context.

*Dzierzawski*, 518 B.R. at 417-19 (bold emphasis in original).

### 3. Application of the requirements to this case

6

### a. "Colorable claim"

Peskin-Shepherd has satisfied the first requirement, of "alleg[ing] a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court." *Dzierzawski*, 518 B.R. at 419-20.

Peskin-Shepherd has described in detail the legal malpractice claims that it seeks to pursue against Mannino, on behalf of the bankruptcy estate. This is in the form of the 22-page draft complaint, consisting of 124 paragraphs, attached as Exhibit 2 to Peskin-Shepherd's reply brief.[5] The draft complaint alleges numerous acts and omissions by attorney Loren Mannino in his representation of Nicole Blume in several matters, including two state court lawsuits brought by Peskin-Shepherd. These include:

- failing to properly and correctly advise Nicole Blume, in several respects, regarding:

  - a lien on rental property she owned in Escanaba, Michigan, which lien had been imposed in favor of Peskin-Shepherd by the judgment of divorce in Nicole's divorce case;

  - Nicole's improper concealment, during and after her divorce case, of real property she acquired in Rochester, Michigan;

  - a transfer later made by Nicole of that real property in Rochester, Michigan, which the state court later found to have been a fraudulent transfer;

  - the defense of an action brought by Peskin-Shepherd against Nicole, to collect attorney fees owing by Nicole (the "Collection Case");

  - a settlement offer made by Peskin-Shepherd early in the Collection Case, which Nicole did not accept, and which was much lower than the judgment that ultimately was entered;

- the assertion of frivolous and ultimately unsuccessful arguments in defending Nicole in the Collection Case, and the failure to properly develop support for defenses alleged in

---

[5] Docket # 251.

7

the Collection Case.

The draft complaint plausibly pleads malpractice claims, including all the elements of a malpractice claim under Michigan law — namely,

> (1) the existence of an attorney-client relationship;
>
> (2) negligence in the legal representation of the plaintiff;
>
> (3) that the negligence was a proximate cause of an injury; and
>
> (4) the fact and extent of the injury alleged.

*Simko v. Blake*, 532 N.W.2d 842, 846 (Mich. 1995).

The Court concludes that the draft complaint alleges claims against Mannino that are "colorable," which in this context merely means that the claims are "plausible claims for relief that would survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."  *See Dzierzawski*, 518 B.R. at 419-20.

In describing the "colorable claim" requirement, this Court has held:

> In determining whether a claim is "colorable" under *Trailer Source*, and *Gibson Group*, the Court must "look to the 'face of the complaint.'" *See Trailer Source*, 555 F.3d at 245, citing *Gibson Group*, 66 F.3d at 1439.  For example, in *Gibson Group* the Sixth Circuit concluded that the Chapter 11 creditor committee's proposed complaint, seeking to avoid pre-petition transfers as preferential and fraudulent, stated a colorable claim under 11 U.S.C. §§ 547 and 548, "[o]n the face of the complaint," **without requiring or considering whether evidence supported the claims stated in the complaint**.  *Gibson Group*, 66 F.3d at 1439.  And other courts have held that a creditor's claims are "colorable" in this context if they would survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6).  *See, e.g.*, *PW Enterprises, Inc. v. North Dakota Racing Comm'n.* (*In re Racing Services, Inc.*), 540 F.3d 892, 900 (8th Cir. 2008) (noting that "in most cases creditors will readily satisfy the colorable claim requirement, and that "a creditor's claims are colorable if they would survive a motion to

8

dismiss.")

*Dzierzawski*, 518 B.R. at 419-20 (emphasis added).

The draft complaint by Peskin-Shepherd states "plausible" malpractice claims, such that they would survive a Rule 12(b)(6) motion. *See generally Wahrman v. Bajas* (*In re Bajas*), 443 B.R. 768, 770-72 (Bankr. E.D. Mich. 2011) (discussing Rule 12(b)(6) standards under the United States Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Mannino disputes this, because, according to Maninno, the alleged acts and omissions by attorney Loren Mannino, at most, amount to mere errors or mistakes in judgment which do not rise to the level of actionable attorney negligence.[6] But errors and mistakes in judgment by an attorney can amount to negligence, and thereby support a malpractice claim, if the attorney failed to "use reasonable skill, care, discretion, and judgment in representing [the] client." *See Simko*, 532 N.W.2d at 846. The Court could not conclude, based solely on a motion to dismiss under Rule 12(b)(6), that Mannino's many errors alleged in the draft complaint do not amount to a breach of this standard of care. *See generally Estate of Knudsen by Long v. Fieger*, No. 341412, 2019 WL 1049681, at *13 (Mich. Ct. App. Mar. 5, 2019), *appeal denied sub nom. Long v. Fieger,* 505 Mich. 995, 939 N.W.2d 252 (2020*), reconsideration denied*, 946 N.W.2d 254 (Mich. 2020).[7]

---

[6] *See* Mannino Obj. (Docket # 233) at pdf pp. 14-17, ¶¶ 32a through 32f.

[7] In *Fieger*, the Michigan Court of Appeals held that:

> There are two components of duty with respect to alleged negligent
> provision of professional services, as with other claims of negligence.
> The general standard of care—the obligation the professional owes the

9

The draft complaint states plausible malpractice claims. This Court merely must decide whether the claims are "colorable," not whether those claims ultimately will prevail.

The "colorable claim" requirement for derivative standing is met.

### b. Cost-benefit analysis

Peskin-Shepherd also has met the requirement that the "colorable claim[s]" that it has alleged against Mannino "would benefit the estate if successful, based on a cost-benefit analysis performed by the bankruptcy court." *Dzierzawski*, 518 B.R. at 420. This requirement "requires this Court to assume that [the] colorable claims will be 'successful,' and then to determine, based on a cost-benefit analysis, whether such successful claims 'would benefit the estate' in the bankruptcy case." *Id.*

This requirement is easily met, given the contingent fee arrangement under which Peskin-Shepherd will pursue the malpractice claims. If the malpractice claims against Mannino are successful, the bankruptcy estate would be substantially enhanced, in a gross amount of more than $300,000. After subtracting the "cost" of such a result, which is a maximum of the reasonable litigation expenses plus one-third of the net amount recovered (*i.e.*, one third of the amount equal to the gross recovery minus expenses), the estate's net benefit would be substantial.

---

client—and the specific standard of care—whether on the particular facts of the case, the professional's conduct satisfied the required general standard of care. "While the court decides questions of duty, general standard of care and proximate cause, **the jury decides whether there is cause in fact and the specific standard of care: whether defendants'conduct in the particular case is below the general standard of care ....**"

*Id.* (citations omitted) (emphasis added).

The bankruptcy estate cannot possibly suffer a loss, but rather can only gain, from Peskin-Shepherd's pursuing the malpractice claims. For example, if the pursuit of the claims fails to obtain any recovery, the bankruptcy estate will pay nothing toward the cost of pursuing the claims. That is because Peskin-Shepherd proposes to pursue the claims by using its counsel, Abramson Law Offices, PLLC, to litigate the claims on the one-third contingency fee arrangement described above. And Abramson Law Offices, PLLC is willing to agree to that fee arrangement. So no attorney fees will be owed if the claims fail to obtain a recovery. And any recovery that is obtained will be reduced by only one-third of the net recovery, to pay the attorney fees.

Similarly, with respect to expenses of the proposed malpractice litigation, the Court will require Peskin-Shepherd to incur and pay the expenses, and the bankruptcy estate will owe Peskin-Shepherd reimbursement of such expenses only if there is a recovery on the claims, and then only to the extent the Court finds that such expenses are reasonable.

The mechanism by which Peskin-Shepherd can and will be reimbursed by the bankruptcy estate for fees and expenses is by the allowance of an administrative expense under, and based on, 11 U.S.C. § 503(b). Applicable case law permits the Court to allow such an administrative expense in a Chapter 13 case to a creditor who has substantially benefitted the bankruptcy estate. *See In re Sharkey*, No. 17-11237, 2017 WL 5476486 (E.D. Mich. Nov. 15, 2017) (applying *Mediofactoring v. McDermott* (*In re Connolly North America, LLC*), 802 F.3d 810 (6th Cir. 2015) to a Chapter 13 case); *cf.* 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4).

For these reasons, what this Court stated in *Dzierzawski* also applies in this case:

> Given these terms, it is clear that granting derivative standing to

11

> [the creditor] as requested cannot result in any net *loss* or net *cost* to the bankruptcy estate. Rather, such derivative standing can possibly result only in a net financial benefit to the bankruptcy estate, or at worst, no net financial effect, positive or negative. From the perspective of the bankruptcy estate, therefore, granting derivative standing to [the creditor] **will give the estate a no-risk chance of recovering additional money**.

*Dzierzawski*, 518 B.R. at 422-23 (emphasis added).

### c. Both the Chapter 13 Trustee and the Debtors refused Peskin-Shepherd's demand to pursue the malpractice claims.

Next, it is clear and undisputed that Peskin-Shepherd has satisfied the requirement that it made a demand on the Chapter 13 Trustee to pursue the malpractice claims against Mannino, and that the Trustee has refused. And by filing its Derivative Standing Motion, Peskin-Shepherd also has demanded that the Debtor Nicole Blume pursue such claims, and it is clear that Nicole Blume refuses to do so.

### d. The Trustee's refusal and the Debtor's refusal to file and pursue the malpractice claims alleged by Peskin-Shepherd, when combined, are "unjustified," as the Sixth Circuit has defined that concept in *Trailer Source*.

The final requirement for granting Peskin-Shepherd derivative standing is that the collective refusal by the Trustee and the Debtor Nicole Blume to file the claims against Mannino was "unjustified in light of the statutory obligations and fiduciary duties" of the Trustee and the Debtor. *See Dzierzawski*, 518 B.R. at 418, 423. In reviewing this requirement in the context of this Chapter 13 case, the Court considers the obligations and duties of both the Chapter 13 Trustee and the Debtor.

The Chapter 13 Trustee has refused to pursue the malpractice claims against Mannino because (a) the Trustee contends she has no statutory duty to do so; (b) the Trustee is not

12

convinced that the claims have merit; and (c) the Trustee believes that if there are meritorious malpractice claims to make, the Debtor Nicole Blume is the appropriate party who should pursue such claims, rather than the Trustee.

For her part, the Debtor Nicole Blume refuses to pursue the claims against Mannino, she says, because she believes that the claims have no merit. This is the only reason, according to the representation made by Nicole Blume's attorney during the December 17, 2020 hearing. The Court will accept that representation as true, even though Loren Mannino himself stated in an earlier hearing in this case that he is a friend, and an "office mate," of Nicole Blume's husband and co-debtor, Sean Blume (who himself is also a family law attorney).[8]

Under the circumstances, and based on the discussion above, the Court concludes that *someone* with standing to do so — either the Trustee or the Debtor Nicole Blume — should pursue the malpractice claims against Mannino, before the claims are barred by the applicable statute of limitations, if competent counsel can be found who is willing to take such a case on a contingent fee basis. Peskin-Shepherd has found such counsel. And there is no reason to believe that the Trustee and the Debtor could not find other such counsel as well, even if they could not hire, or did not want to hire, Peskin-Shepherd's chosen counsel.

---

[8] Loren Mannino made these statements on the record during a hearing held in this case on September 27, 2018. The digital audio recording of that hearing is on file in this case, at Docket # 139. Other documents in the record shows that Sean Blume and ManninoMartin share the same office space. The Debtors' Schedules A/B and C, filed in this case, say that the Debtor Sean Blume is the owner of what he describes as a "sole practitioner law office, Law Office of Sean Blume, LLC." (Docket # 1 at pdf pp. 15, 20; Docket # 17 at pdf p. 2). The Debtors' Schedule I lists Sean Blume's occupation as an attorney, employed by "Sean Blume Law Office LLC," located at 12900 Hall Rd. #470, Sterling Heights, MI 48313." (Docket # 1 at pdf p. 30). That is also the address of Loren Maninno's law firm, ManninoMartin, according to ManninoMartin's proof of claim, which was filed for ManninoMartin by the Debtors under Fed. R. Bankr. P. 3004, and exhibits attached to that proof of claim. (Proof of Claim # 7-1 at ¶ 3, and invoices attached thereto).

13

The Trustee may well be correct in arguing that she has no statutory or fiduciary duty to pursue the claims, and that it is the Debtor who has such duty.[9] *But see Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005) ("The trustee in Chapter 13 exists to preserve the bankruptcy estate for creditors."). It may well be that, as between the Chapter 13 Trustee and the Debtor Nicole Blume, the authority to file and prosecute Nicole Blume's malpractice claims against Mannino belongs only to the Debtor, so that the Trustee lacks such authority. *See, e.g.*, 8 *Collier on Bankruptcy* ¶ 1303.04 (Richard Levin & Henry J. Sommer eds., 16th ed. 2021) (footnotes omitted) ("[C]ourts have granted chapter 13 debtors the right to bring lawsuits that are property of the estate. . . . Certain rights, such as the right to bring a lawsuit . . ., are implicit in section 1306(b), which allows the debtor to retain possession of all property of the estate, except as provided in a confirmed plan or order confirming a plan.").

But regardless of whether the Trustee has the authority and a duty to pursue the malpractice claims, the Debtor Nicole Blume clearly has a fiduciary duty to the bankruptcy estate and to creditors. That includes a fiduciary duty to protect and conserve estate property for the benefit of creditors, and to avoid damaging the bankruptcy estate. The Court agrees with, and finds applicable to a Chapter 13 debtor, the following description of the fiduciary duties of a Chapter 11 debtor-in-possession:

> [A Chapter 11] debtor-in-possession . . . owes fiduciary duties to his estate and creditors. [Citations omitted.]
> . . .

---

[9] The Chapter 13 Trustee points out, for example, that while one of the statutory duties of a Chapter 7 Trustee is to "collect and reduce to money the property of the estate," 11 U.S.C. § 704(a)(1), that is not one of the statutory duties of a Chapter 13 Trustee. *See* 11 U.S.C. § 1302(b)(1) (listing Chapter 13 Trustee's duties as including "the duties specified in" several listed subsections of § 704(a), but not § 704(a)(1)).

14

While the Bankruptcy Code permits a debtor to operate its business and exercise control over its estate, **the debtor-in-possession acts as a fiduciary of the estate and its creditors**. *In re Futterman*, 584 B.R. 609, 618-19 (Bankr. S.D.N.Y. 2018) ("The point of bankruptcy is to marshal assets in a way that maximizes their value for the benefit, primarily, of creditors, and then once creditors are paid, for owners. When a debtor remains in possession of his businesses and properties in a chapter 11 case, he does so as a fiduciary for those creditors."). Among other responsibilities, **a Debtor-in possession has a fiduciary duty to: a) protect and conserve estate property for the benefit of creditors** (including a duty to avoid self-dealing **and to investigate and prosecute warranted avoidance actions**); b) **avoid damaging the estate**; and c) refrain from acting in a manner that could hinder a successful reorganization. *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (Lifland, C.J.).
. . .

**Failure to protect and conserve estate property constitutes a breach of fiduciary duty.** *In re Ionosphere Clubs, Inc.*, 113 B.R. at 169.

*In re Sillerman*, 605 B.R. 631, 640, 648 (Bankr. S.D.N.Y. 2019) (emphasis added).

The failure and refusal of both the Trustee and the Debtor, Nicole Blume, to file and pursue the legal malpractice claims against Mannino creates an unjustified risk that those claims might soon be lost, because the statute of limitations may soon bar them. Such a loss would permanently destroy property of the bankruptcy estate. The failure and refusal to pursue the claims is "unjustified in light of the statutory obligations and fiduciary duties of" the combination of the Debtor and the Trustee. This satisfies the final requirement for granting derivative standing in this case.

For these reasons, the Court will enter an order granting Peskin-Shepherd's Derivative Standing Motion, with the conditions described in Part IV of this Opinion, below.

### 4. Mannino's arguments

15

The Court will address arguments made by Mannino, in objecting to the Derivative Standing Motion. Mannino objects to the motion on several grounds, but all such objections must be overruled, because (1) in their capacity as the targets of the malpractice claims that Peskin-Shepherd seeks derivative standing to pursue, Mannino lacks any standing to object to the derivative standing; and (2) even though Mannino claims also to be a creditor in this bankruptcy case, and to have standing to object in that capacity, Mannino will suffer no prejudice *as a creditor* whatsoever if the Derivative Standing Motion is granted.

Mannino admits that in their capacity as the target defendants of the malpractice claims, Mannino lacks standing to object to the granting of derivative standing here. Mannino even cites a Sixth Circuit case that so holds, *Moran v. LTV Steel Co., Inc.* (*In re LTV Steel Co., Inc.*), 560 F.3d 449, 453-54 (6th Cir. 2009).[10] As the Sixth Circuit held in that case,

> We agree . . . that "parties are not aggrieved by an order granting a creditor derivative standing when their interest in the order is as party defendants in the resulting adversary proceeding . . . because the interest that [such parties] assert as defendants to an adversary proceeding is not protected by the Bankruptcy Code."

*Id.* at 454 (citation omitted).

Mannino claims to have standing to object in the capacity as a creditor in this bankruptcy case. Mannino's claim is based on a proof of claim filed on their behalf by the Debtors, which asserts a nonpriority, unsecured claim for legal services in the amount of $13,333.10.[11] But in *that* capacity, as a creditor, Mannino has no standing, because to the extent they have an allowed

---

[10] ManninoMartin Objection (Docket # 233) at 6 n.2.

[11] Claim # 7-1. The Debtors, through their attorney, filed this proof of claim for Mannino, after Mannino failed to timely file their own proof of claim. *See* Fed. R. Bankr. P. 3004. Peskin-Shepherd has filed an objection to Mannino's claim (Docket # 97).

claim in this case, they will not suffer any prejudice of any kind if derivative standing is granted. That is because the bankruptcy estate and the creditor body as a whole will not suffer any prejudice if the Court grants derivative standing to Peskin-Shepherd, on the terms described in this Opinion. Rather, for the reasons described in Part III.A.3 of this Opinion, above, such action by this Court merely "will give the estate a no-risk chance of recovering additional money." *See* Part III.A.3.b above, quoting *Dzierzawski*, 518 B.R. at 422-23.

For these reasons, the Court overrules Mannino's objections in their entirety.

In addition, the Court will briefly explain some of the reasons why it would reject Mannino's arguments on their merits, if Mannino had standing to make them.

First, Mannino argues that there is no case in the Sixth Circuit or this district that has granted derivative standing for a creditor to pursue a tort claim, such as legal malpractice, on behalf of a bankruptcy estate. Mannino points out that the cases cited by the parties granted derivative standing to pursue avoidance actions under Chapter 5 of the Bankruptcy Code. But there is no good reason why bankruptcy courts cannot also grant derivative standing to a creditor to pursue a malpractice claim or other tort claim belonging to the bankruptcy estate. Mannino cites no case holding that bankruptcy courts lack such authority.

Second, Mannino argues that derivative standing is not permitted here because Michigan law prohibits the assignment of a legal malpractice claim, citing *Joss v. Drillock*, 338 N.W.2d 736, 739 (Mich. Ct. App. 1983). Mannino is incorrect. Granting derivative standing here does not involve any assignment or transfer of the legal malpractice claims. First, regardless of whether those state law claims are nonassignable under state law, those claims now are property of the bankruptcy estate, by virtue of federal bankruptcy law. *See* 11 U.S.C. §§ 541 and

1306(a)(1); *see also Allstate Ins. Co. v. Harris* (*In re Harris*), 474 B,R, 816, 820 (Bankr. E.D.

Mich. 2012) (Chapter 7 debtors' pre-petition legal malpractice claim based on Michigan law was

property of the bankruptcy estate, subject to any allowed exemptions); *Moyer v. Carlyle* (*In re*

*Stansberry*), No. 11-80450, 2012 WL 243745, at *3 (Bankr. W.D. Mich. Jan. 25, 2012) (Chapter

7 debtor's pre-petition legal malpractice claim, based on Michigan law, was "included within the

property of the bankruptcy estate" and "the bankruptcy estate, acting through its Trustee," was

the party prosecuting such claim).  As to this point, this case is analogous to the case of *Cottrell*

*v. Schilling* (*In re Cottrell*), 876 F.2d 540, 542-43 (6th Cir. 1989).  In that Chapter 7 case, the

debtors argued that their pre-petition personal injury claim was not property of the bankruptcy

estate, because it was nontransferable to a third party under Kentucky law.  The Sixth Circuit

disagreed, and held that the "legislative intent of Section 541 was to extend the definition of

property to include all assignable and nonassignable causes of action" as assets of the bankrupt

estate.  876 F.2d at 542.

Mannino's counsel acknowledged during the December 17, 2020 hearing that even if the

legal malpractice claims are nonassignable under Michigan law, those claims are property of the

bankruptcy estate, and Mannino has cited no authority suggesting otherwise.  Granting derivative

standing does not assign or transfer those claims to anyone; they remain property of the

bankruptcy estate.

Third, Mannino argues that it would be bad policy to grant derivative standing to enable a

creditor to prosecute a legal malpractice claim on behalf of the bankruptcy estate.  This is so,

Mannino says, because it could unduly interfere with the attorney-client privilege between the

debtor and her attorney.  Coming from the lawyer, Loren Mannino, this argument is flawed

because the attorney-client privilege belongs to the client, not the lawyer, *see, e.g., French v. Miller* (*In re Miller*), 247 B.R. 704, 708 (Bankr. N.D. Ohio 2000), and in this case the client (the Debtor Nicole Blume) has made no such argument. Moreover, this same argument by Mannino could be made whenever a trustee in a Chapter 7 case pursues a legal malpractice claim on behalf of the bankruptcy estate. But in that situation, the trustee clearly may prosecute the legal malpractice claim, even though it may have the effect of waiving in part the debtor's attorney-client privilege. *See, e.g.*, Mich. R. Prof. Conduct 1.6(a) and 1.6(c)(5) (a "[c]onfidence refers to information protected by the client-lawyer privilege under applicable law" and "[a] lawyer may reveal . . . confidences or secrets necessary to . . . defend the lawyer . . . against an accusation of wrongful conduct.") Finally, Mannino has failed to explain specifically ***how*** granting derivative standing to Peskin-Shepherd in this case would unduly interfere with the Debtor Nicole Blume's attorney-client privilege.

Fourth, Mannino argues, for various reasons, that the legal malpractice claims that Peskin-Shepherd proposes to pursue are not "colorable" claims. As stated in Part III.A.3.a of this Opinion, the Court has rejected this argument, and has concluded that Peskin-Shepherd's detailed draft complaint states legal malpractice claims that ***are*** "colorable." Mannino's arguments do not persuade the Court otherwise, and do not warrant further extended discussion, given Mannino's clear lack of standing to make them in this setting.

Fifth, Mannino argues that counsel chosen by Peskin-Shepherd to represent it in prosecuting the legal malpractice claims has an "unwaivable conflict" under Mich. R. Prof.

Conduct 1.7(b).[12]  This is because, according to Mannino, prosecuting the legal malpractice claims requires Peskin-Shepherd's attorney to "pursue a challenge to *Peskin-Shepherd's* invoices."[13]  This argument concerns only one of at least 12 instances of alleged malpractice by Mannino.[14]  This is the claim that in defending a lawsuit for legal fees brought by Peskin-Shepherd, in challenging the reasonableness of Peskin-Shepherd's invoices to Nicole Blume, Mannino "fail[ed] to hire an expert to testify that Peskin-Shepherd's fees were 'unreasonable.'"[15]  This malpractice theory appears to be that if Mannino had hired such an expert, he would have been successful in reducing the amount of legal fees that Nicole Blume was found to owe to Peskin-Shepherd.  This implies an argument that Peskin-Shepherd's legal fees were, to some extent, unreasonably high.

---

[12]  That rule provides:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Mich. R. Prof. Conduct 1.7(b).

[13]  Mannino Obj. (Docket # 233) at pdf p. 19, ¶ 37 (italics in original).

[14]  *See* Draft Complaint (Docket # 251, Ex. 2) at ¶¶ 99(a) through 99(k).

[15]  *Id.* at ¶ 99(k).

20

As noted above, this is but one of at least 12 instances of malpractice alleged in the draft complaint that Peskin-Shepherd wants to file against Mannino on behalf of the bankruptcy estate. Mannino has not argued that there is any conflict in Peskin-Shepherd pursuing any of the many other theories of alleged malpractice. As to this theory, the amount of Peskin-Shepherd's attorney fees for which Nicole Blume is liable has been determined by a final judgment in state court, and that amount has been affirmed by the Michigan Court of Appeals, in a decision filed November 5, 2020. (That appellate decision remanded the case only for a redetermination of the amount of prejudgment interest.)[16] So the issue of the reasonableness of the amount of Peskin-Shepherd's fees is no longer a live issue in state court, subject only to the highly speculative possibility that the Michigan Supreme Court might take the case and ultimately modify that result. This makes it unlikely that there ever will actually be any conflict with the interests of Peskin-Shepherd.

In part for that reason, and also in part because Peskin-Shepherd may benefit substantially as a creditor in this case, along with the other creditors, if the proposed malpractice action is successful,[17] the Court is not persuaded that the conflict Mannino alleges cannot be waived under Mich. R. Prof. Conduct 1.7(b). And both Peskin-Shepherd and its proposed counsel obviously are willing to waive any such conflict.

**B. The Abandonment Motion**

---

[16] A copy of the Michigan Court of Appeals decision is on file in this case at Docket # 237.

[17] For these reasons, for example, under Rule 1.7(b)(1), Peskin-Shepherd's counsel could "reasonably believe" that its representation of Peskin-Shepherd in the pending state court litigation against the Debtors "will not be adversely affected" by its representation of Peskin-Shepherd in prosecuting the malpractice claims against Mannino, and vice versa.

The Trustee's Abandonment Motion is based on 11 U.S.C. § 554(a), which states:

> After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

The Trustee has failed to demonstrate that the malpractice claims against Mannino are either "burdensome to the estate" or "of inconsequential value and benefit to the estate." The claims clearly impose no burden whatsoever on the bankruptcy estate. And as discussed above, the claims may well have significant value to the bankruptcy estate. Neither the Trustee nor the other parties supporting the Abandonment Motion (the Debtors and Mannino) have demonstrated otherwise.

For these reasons, the Court will enter an order denying the Chapter 13 Trustee's Abandonment Motion.

## IV. Conditions of derivative standing

For the reasons stated above, the Court will enter a separate order granting Peskin-Shepherd's Derivative Standing Motion, with conditions. The Order will include the following provisions, conditions and requirements:

1. Peskin-Shepherd is granted derivative standing, and relief from the automatic stay, to file and prosecute a legal malpractice action in state court against attorney Loren Mannino and ManninoMartin (collectively, "Mannino"), on behalf of the bankruptcy estate.

2. No later than February 12, 2021, Peskin-Shepherd must commence, in an appropriate state court, a legal malpractice action against Mannino, by filing a complaint substantially similar in form and substance to the draft complaint attached as Exhibit 2 to Peskin-Shepherd's reply brief (Docket # 251). If Peskin-Shepherd fails to file a legal malpractice action by the February

12, 2021 deadline, then the derivative standing granted by the Court's Order will automatically expire.

3.   Peskin-Shepherd must exercise reasonable diligence in prosecuting the legal malpractice action, and any settlement of all or any part of that litigation is subject to this Court's approval.  Peskin-Shepherd must seek this Court's approval of any settlement by filing a motion under Fed. R. Bankr. P. 9019.

4.   Peskin-Shepherd may employ Abramson Law Offices, PLLC and any or all of its attorneys, and/or any other attorney(s), to represent Peskin-Shepherd in the legal malpractice action, without the need for further order of this Court approving any such employment.

5.   Peskin-Shepherd must enter into a written fee agreement with Abramson Law Offices, PLLC, and/or with any other attorney(s) Peskin-Shepherd may employ, which provides for reimbursement by Peskin-Shepherd of all reasonable litigation expenses plus payment of a contingency fee of no more than one-third of the net recovery (*i.e.*, the recovery after deducting expenses).

6.   Peskin-Shepherd will incur and pay the attorney fees and expenses for prosecuting the legal malpractice claims, and may seek reimbursement for such attorney fees and expenses from the bankruptcy estate only when and if funds are recovered from the malpractice claims.  (In the event of a proposed settlement, Peskin-Shepherd may seek such reimbursement in and as part of the Rule 9019 motion seeking approval of the settlement).  Peskin-Shepherd may seek reimbursement for such attorney fees and expenses from the bankruptcy estate as an administrative expense under, and based only on, 11 U.S.C. § 503(b).  *See generally Mediofactoring v. McDermott* (*In re Connolly North America, LLC*), 802 F.3d 810 (6th Cir.

2015); *In re Sharkey*, No. 17-11237, 2017 WL 5476486 (E.D. Mich. Nov. 15, 2017); *cf.* 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4).

7.  Except when and to the extent this Court grants a request by Peskin-Shepherd for allowance of an administrative expense under ¶ 6 above, the bankruptcy estate will have no liability or obligation to pay or reimburse for any attorney fees or expenses incurred in the prosecution of the legal malpractice claims.

8.  No later than February 5, 2021, Peskin-Shepherd must file, in this bankruptcy case, a statement accepting, in full, the terms of the Court's Order.  If Peskin-Shepherd does not timely file such a statement, this Court may vacate the Order and then deny Peskin-Shepherd's Derivative Standing Motion (Docket # 220), without further notice or hearing.

**Signed on January 29, 2021**

/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**

24